DAVID L. SCHER, ESQ. (DS-0549)
BLOCK O'TOOLE & MURPHY, LLP
Attorneys for Plaintiff
One Penn Plaza, Suite 5315
New York, NY 10119
(212) 736-5300
dscher@blockotoole.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
IKAIKA MOLER,

        Plaintiff,                                                                                  Docket No.:

v.                                                                                                            COMPLAINT

UNITED STATES OF AMERICA, UNITED STATES                     JURY TRIAL DEMANDED
DEPARTMENT OF TRANSPORTATION,
UNITED STATES DEPARTMENT
OF TRANSPORTATION MARITIME ADMINISTRATION,
ACME INDUSTRIAL, INC., TOTE SERVICES and TOTE
INC.,

        Defendants.
-----------------------------------------------------------------------X

      Plaintiff, Ikaika Moler, alleges upon information and belief as follows:

**JURISDICTION AND VENUE**

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the Supplemental Rules thereto governing certain admiralty and maritime claims. This Court has jurisdiction pursuant to 28 U.S.C. Section 1333.

2. This Court has jurisdiction pursuant to 28 U.S.C. Section 1331, 28 U.S.C. Section 1346 and/or the Federal Tort Claims Act.

3. This Court has jurisdiction pursuant to the Public Vessels Act, 46 U.S.C. Section 311, et. seq.

4. This Court has jurisdiction pursuant to the Suits in Admiralty Act, 46 U.S.C. Section 30901, et. seq.

5. The tortious acts/omissions alleged herein were committed by Defendants, jointly and severally, and/or their employees/agents within the State of New York and within the District in which this Hon. Court sits.

## THE PARTIES

6. Plaintiff IKAIKA MOLER is a resident of Teaneck, New Jersey.

7. Defendant ACME INDUSTRIAL INC. is a corporation engaged in the business of marine, industrial and commercial maintenance and repair, and is a registered corporation with the New York State Department of State having a principal place of business at 326-328 Front Street, Staten Island, NY 10304.

8. Defendant TOTE SERVICES is a corporation engaged in the business of providing operation and management services to ship owners, and has its principal place of business in the State of Florida.

9. Defendant TOTE SERVICES regularly does and solicits business in the State of New York.

10. Defendant TOTE INC. is a corporation engaged in the business of providing operation and management services to ship owners, and has its principal place of business in the State of Florida.

11. Defendant TOTE INC. regularly does and solicits business in the State of New York.

12. Defendant TOTE INC. rendered operation and management services to The Vessel as described below while in the State of New York and the S.D.N.Y.

13. Defendant UNITED STATES OF AMERICA is a Sovereign and legal entity against which

the causes of action seeking recovery pled herein have been allowed.

14. Defendant UNITED STATES DEPARTMENT OF TRANSPORTATION is a Sovereign and legal entity against which the causes of action seeking recovery pled herein have been allowed.

15. Defendant UNITED STATES DEPARTMENT OF TRANSPORTATION MARITIME ADMINISTRATION is a Sovereign and legal entity against which the causes of action seeking recovery pled herein have been allowed.

## THE VESSEL

16. This matters arises from an injury to plaintiff that occurred on October 25, 2017 at approximately 3:30 p.m. aboard the motor vessel "Empire State VI" (also referred to as the "Vessel").

17. At the time of the incident, the Vessel was docked in navigable waters of the United States of America. .

18. At the time of the incident, the Vessel was docked at the Maritime College, State University of New York's (SUNY Maritime College's) docks located at the Throggs Neck Peninsula in the Bronx, New York.

19. At the time of the incident and all times mentioned herein, the Vessel was owned by Defendant UNITED STATES OF AMERICA ("USA").

20. At the time of the incident and all times mentioned herein, the Vessel was owned by Defendant UNITED STATES DEPARTMENT OF TRANSPORTATION ("USDOT").

21. At the time of the incident and all times mentioned herein, the Vessel was owned by Defendant

UNITED STATES OF DEPARTMENT OF TRANSPORTATION MARITIME ADMINISTRATION ("MARITIME ADMINISTRATION").

22. At the time of the incident and all times mentioned herein, the Vessel was operated by Defendant UNITED STATES OF AMERICA ("USA").

23. At the time of the incident and all times mentioned herein, the Vessel was operated by Defendant UNITED STATES DEPARTMENT OF TRANSPORTATION ("USDOT").

24. At the time of the incident and all times mentioned herein, the Vessel was operated by Defendant UNITED STATES OF DEPARTMENT OF TRANSPORTATION MARITIME ADMINISTRATION ("MARITIME ADMINISTRATION").

25. At the time of the incident and all times mentioned herein, the Vessel was controlled by Defendant UNITED STATES OF AMERICA ("USA").

26. At the time of the incident and all times mentioned herein, the Vessel was controlled by Defendant UNITED STATES DEPARTMENT OF TRANSPORTATION ("USDOT").

27. At the time of the incident and all times mentioned herein, the Vessel was controlled by Defendant UNITED STATES OF DEPARTMENT OF TRANSPORTATION MARITIME ADMINISTRATION ("MARITIME ADMINISTRATION").

28. At the time of the incident and all times mentioned herein, the Vessel was maintained by Defendant UNITED STATES OF AMERICA ("USA").

29. At the time of the incident and all times mentioned herein, the Vessel was maintained by Defendant UNITED STATES DEPARTMENT OF TRANSPORTATION ("USDOT").

30. At the time of the incident and all times mentioned herein, the Vessel was maintained by Defendant UNITED STATES OF DEPARTMENT OF TRANSPORTATION MARITIME

ADMINISTRATION ("MARITIME ADMINISTRATION").

31. At the time of the incident and all times mentioned herein, the Vessel was employed by Defendant UNITED STATES OF AMERICA ("USA").

32. At the time of the incident and all times mentioned herein, the Vessel was employed by Defendant UNITED STATES DEPARTMENT OF TRANSPORTATION ("USDOT").

33. At the time of the incident and all times mentioned herein, the Vessel was employed by Defendant UNITED STATES OF DEPARTMENT OF TRANSPORTATION MARITIME ADMINISTRATION ("MARITIME ADMINISTRATION").

34. At the time of the incident and all times mentioned herein, the Vessel was crewed by Defendant UNITED STATES OF AMERICA ("USA").

35. At the time of the incident and all times mentioned herein, the Vessel was crewed by Defendant UNITED STATES DEPARTMENT OF TRANSPORTATION ("USDOT").

36. At the time of the incident and all times mentioned herein, the Vessel was crewed by Defendant UNITED STATES OF DEPARTMENT OF TRANSPORTATION MARITIME ADMINISTRATION ("MARITIME ADMINISTRATION").

37. At the time of the incident and all times mentioned herein, the Vessel was in navigation but under repair by Defendant UNITED STATES OF AMERICA ("USA").

38. At the time of the incident and all times mentioned herein, the Vessel was in navigation but under repair by Defendant UNITED STATES DEPARTMENT OF TRANSPORTATION ("USDOT").

39. At the time of the incident and all times mentioned herein, the Vessel was in navigation but under repair by Defendant UNITED STATES OF DEPARTMENT OF TRANSPORTATION

MARITIME ADMINISTRATION ("MARITIME ADMINISTRATION") and or its agents.

40. At the time of the incident and all times mentioned herein, the Vessel was serviced by Defendant UNITED STATES OF AMERICA ("USA").

41. At the time of the incident and all times mentioned herein, the Vessel was serviced by Defendant UNITED STATES DEPARTMENT OF TRANSPORTATION ("USDOT") and or its agents.

42. At the time of the incident and all times mentioned herein, the Vessel was serviced by Defendant UNITED STATES OF DEPARTMENT OF TRANSPORTATION MARITIME ADMINISTRATION ("MARITIME ADMINISTRATION") and or its agents.

43. At the time of the incident and all times mentioned herein, Defendant UNITED STATES OF AMERICA was responsible for keeping the Vessel in seaworthy condition.

44. At the time of the incident and all times mentioned herein, Defendant UNITED STATES DEPARTMENT OF TRANSPORTATION was responsible for keeping the Vessel in seaworthy condition.

45. At the time of the incident and all times mentioned herein, Defendant UNITED STATES OF DEPARTMENT OF TRANSPORTATION MARITIME ADMINISTRATION was responsible for keeping the Vessel in a safe condition for any seaman and/or harbor workers and/or other individuals working aboard the Vessel.

46. At the time of the incident and all times mentioned herein, Defendant was responsible for keeping the Vessel in a safe condition for any seaman and/or harbor workers and/or other individuals working aboard the Vessel.

47. At the time of the incident and all times mentioned herein, Defendant TOTE SERVICES

operated the Vessel.

48. At the time of the incident and all times mentioned herein, Defendant TOTE INC. operated the Vessel.

49. At the time of the incident and all times mentioned herein, Defendant TOTE SERVICES serviced the Vessel.

50. At the time of the incident and all times mentioned herein, Defendant TOTE INC. serviced the Vessel.

51. At the time of the incident and all times mentioned herein, Defendant TOTE SERVICES used the Vessel.

52. At the time of the incident and all times mentioned herein, Defendant TOTE INC. used the Vessel.

53. At the time of the incident and all times mentioned herein, Defendant TOTE SERVICES controlled the Vessel.

54. At the time of the incident and all times mentioned herein, Defendant TOTE INC. controlled the Vessel.

55. At the time of the incident and all times mentioned herein, Defendant TOTE SERVICES occupied the Vessel.

56. At the time of the incident and all times mentioned herein, Defendant TOTE INC. occupied the Vessel.

57. At the time of the incident and all times mentioned herein, Defendant TOTE SERVICES was responsible for servicing the Vessel.

58. At the time of the incident and all times mentioned herein, Defendant TOTE INC. was

responsible for servicing the Vessel.

59. At the time of the incident and all times mentioned herein, Defendant TOTE SERVICES was responsible for maintaining the Vessel.

60. At the time of the incident and all times mentioned herein, Defendant TOTE INC. was responsible for maintaining the Vessel.

61. At the time of the incident and all times mentioned herein, Defendant TOTE SERVICES was responsible for crewing the Vessel.

62. At the time of the incident and all times mentioned herein, Defendant TOTE INC. was responsible for crewing the Vessel.

63. At the time of the incident and all times mentioned herein, Defendant TOTE SERVICES was responsible for repairing the Vessel.

64. At the time of the incident and all times mentioned herein, Defendant TOTE INC. was responsible for repairing the Vessel.

65. At the time of the incident and all times mentioned herein, Defendant TOTE SERVICES was responsible for keeping the Vessel in seaworthy condition.

66. At the time of the incident and all times mentioned herein, Defendant TOTE INC. was responsible for keeping the Vessel in seaworthy condition.

67. At the time of the incident and all times mentioned herein, Defendant TOTE SERVICES was responsible for keeping the Vessel in a safe condition for any seaman and/or other individuals working aboard the Vessel.

68. At the time of the incident and all times mentioned herein, Defendant TOTE INC. was responsible for keeping the Vessel in a safe condition for any seaman and/or other individuals

working aboard the Vessel.

69. At the time of the incident and/or sometime prior thereto Defendant TOTE SERVICES was hired/retained by Defendant USA to provide certain services with respect to the Vessel.

70. At the time of the incident and/or sometime prior thereto Defendant TOTE INC. was hired/retained by Defendant USA to provide certain services with respect to the Vessel.

71. At the time of the incident and/or sometime prior thereto Defendant TOTE SERVICES was hired/retained by Defendant USDOT to provide certain services with respect to the Vessel.

72. At the time of the incident and/or sometime prior thereto Defendant TOTE INC. was hired/retained by Defendant USDOT to provide certain services with respect to the Vessel.

73. At the time of the incident and/or sometime prior thereto Defendant TOTE SERVICES was hired/retained by Defendant MARITIME ADMINISTRATION to provide certain services with respect to the Vessel.

74. At the time of the incident and/or sometime prior thereto Defendant TOTE INC. was hired/retained by Defendant MARITIME ADMINISTRATION to provide certain services with respect to the Vessel.

75. At the time of the incident, Plaintiff MOLER was an employee of Defendant ACME.

76. At the time of the incident, Plaintiff MOLER was lawfully working aboard the Vessel.

77. At the time of the incident, Plaintiff MOLER was lawfully working aboard the Vessel as a maintenance engineer.

78. At the time of the incident, Plaintiff MOLER was lawfully working aboard the Vessel in the course and scope of his employment with Defendant ACME.

79. At the time of the incident, Plaintiff MOLER was working on the Vessel, below deck, upon a

pipe that was part of the Vessel's superheater.

80. At the time of the incident, Plaintiff MOLER was a "Seaman" as defined by the Jones Act.

81. At the time of the incident, Plaintiff MOLER was a "Dockworker" as defined by the Jones Act.

82. At the time of the incident, Plaintiff MOLER was a "Harbor Worker" as defined by the Longshore and Harbor Workers' Compensation Act.

83. At the time of the incident or prior thereto, ACME was hired/retained to perform certain maintenance and/or repair work aboard the Vessel.

84. At the time of the incident or prior thereto, ACME was hired/retained by Defendant USA.

85. At the time of the incident or prior thereto, ACME was hired/retained by Defendant USDOT.

86. At the time of the incident or prior thereto, ACME was hired/retained by Defendant MARITIME ADMINISTRATION.

87. At the time of the incident or prior thereto, ACME was hired/retained by Defendant TOTE SERVICES.

88. At the time of the incident or prior thereto, ACME was hired/retained by Defendant TOTE INC.

89. At the time of the incident and prior thereto, ACME was engaged in work aboard the Vessel.

90. At the time of the incident and prior thereto, ACME was engaged in work aboard the Vessel that was necessary for the Vessel to be seaworthy.

91. At the time of the incident or prior thereto, ACME was engaged in work aboard the Vessel including, among other things, upon the Vessel's superheater.

## THE INCIDENT

92. On October 25, 2017 at approximately 3:30pm, Plaintiff MOLER was working below deck aboard the Vessel on a pipe that was part of the Vessel's superheater.

93. Plaintiff MOLER had been previously assured that the aforesaid pipe had been properly cooled and/or cleared and/or otherwise made safe for his work.

94. Plaintiff MOLER removed a plug from the aforesaid pipe.

95. Immediately upon removing said plug, extremely hot water/liquid/steam suddenly and unexpectedly was propelled out of said pipe, striking Plaintiff MOLER's body continuously for a sustained period of time.

96. The small below deck space in which Plaintiff MOLER was working prevented him from quickly escaping the stream of extremely hot water/liquid/steam.

97. The above incident caused numerous severe and permanent personal injuries to Plaintiff MOLER, as further detailed below.

## LIABILITY

98. Defendants, their employees, representative, agents and/or assigns were negligent and otherwise responsible for causing the above-referenced incident and resulting injuries in that they, inter alia, negligently/wrongly assured Plaintiff that the pipe had been properly cleared/cooled, negligently/wrongly failed to clear/cool the pipe, negligently/wrongly instructed Plaintiff MOLER to remove the plug from said pipe, negligently maintained/repaired/serviced/staffed/used the Vessel, allowed Plaintiff's work to proceed despite notice (actual and/or constructive) that the pipe contained extremely hot water/liquid/steam that would foreseeably be propelled from the pipe once its plug was

removed, allowed Plaintiff's work to proceed in an unsafe manner, retained/relied upon companies/individuals who allowed Plaintiff's work to proceed in an unsafe manner, caused/allowed the Vessel to be and become unseaworthy and/or unfit for its intended service, caused/allowed for an improperly hired/trained crew, failed to use due care and diligence to provide a seaworthy Vessel and were otherwise negligent, careless and reckless herein.

99. The aforesaid acts/omissions of Defendants was/were a proximate cause of the accident and Plaintiff MOLER's resulting injuries.

100. Plaintiff MOLER had no negligence or fault for the within incident.

101. As a result of the aforesaid incident, Plaintiff MOLER suffered, among other things, severe burns to his body including to his face, neck, shoulders, chest, arms, abdomen and torso; extended hospitalization; need for multiple surgeries including cleansing/debridement procedure and shoulder surgery; nausea and vomiting; post traumatic stress disorder, anxiety and depression; right shoulder injury with internal tearing and scarring; right shoulder pain and limited range of motion; general loss of upper body range of motion; severe pain; recurring rashes, heat sensations, itching and pain at all burn sites; right ear pain, discharge, ringing and diminished hearing; necessity for right ear surgery.

102. Plaintiff MOLER seeks to recover damages in negligence under the general maritime law and, among other things, based upon the doctrine of unseaworthiness and under the Jones Act against all Defendants.

103. As a result of the aforesaid incident, Plaintiff MOLER has been and continues to be disabled from employment.

104. As a result of the aforesaid incident, Plaintiff MOLER has sustained and will continue to sustain pain and suffering, loss of enjoyment of life, medical expenses and lost earnings and benefits.

105. The matter in controversy, exclusive of interest and costs, exceeds $75,000.00.

106. Plaintiff is entitled to maintenance, cure and medical expenses for the period of time that he was disabled and unable to work in the total sum of Five Hundred Thousand Dollars ($500,000).

107. By reason of the foregoing, Plaintiff has been damaged in the sum of no less than TEN MILLION DOLLARS ($10,000,000.00).

    **WHEREFORE,** Plaintiff prays for relief as follows:

    A:    Monetary award for maintenance, cure and medical expenses;

    B:    Monetary award for pain and suffering and loss of enjoyment of life;

    C:    Monetary award for loss of earnings and benefits;

    D:    Costs of action incurred herein;

    E:    Pre and post-judgment interest as provided by law; and

    F:    Such other and further legal and equitable relief as this Court deems necessary, just and proper.

    Dated: New York, New York
           August 31, 2018

Respectfully submitted,

DAVID L. SCHER (DS 0549)
BLOCK O'TOOLE & MURPHY, LLP

13

Attorney for Plaintiff
One Penn Plaza, Suite 5315
New York, NY 10119
(212) 736-5300
dscher@blockotoole.com